```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                  DIVISION OF ST. THOMAS AND ST. JOHN

GERMAN AMERICAN CAPITAL CORP.,         )
                                       )
            Plaintiff,                 )
                                       )
       v.                              )    Civil No. 2013-118
                                       )
DEAN F. MOREHOUSE, MOREHOUSE REAL      )
ESTATE INVESTMENTS, LLC, and HILL      )
SAPPHIRE, LLC,                         )
                                       )
            Defendants.                )
                                       )
                                       )
                                       )
```

ATTORNEYS:

**Kyle R. Waldner, Esq.**
Quintairos, Prieto, Wood & Boyer, P.A.
St. Thomas, VI
   *For the plaintiff German American Capital Corporation*,

**Neil D. Goldman, Esq.**
Young, Goldman & Van Beek, P.C.
Alexandria, VA
   *For the defendant Dean F. Morehouse,*

**Gregory H. Hodges, Esq.**
Dudley Topper & Feuerzeig
St. Thomas, VI
   *For the defendant Morehouse Real Estate Investments, LLC,*

**Benjamin A. Currence, Esq.**
Law Offices Benjamin A. Currence
St. Thomas, VI
   *For the defendant Hill Sapphire, LLC.*

                    MEMORANDUM OPINION AND ORDER

       Before the Court are the motions of defendants Dean F.

Morehouse, Morehouse Real Estate Investment, LLC, and Hill

Sapphire, LLC, for dismissal of the complaint in this matter.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

On July 11, 2005, Brampton Plantation, LLC ("Brampton") executed a revolving promissory note with Branch Banking and Trust Company ("BB&T"). BB&T agreed to loan Brampton $28,000,000 (the Loan). To that end, Brampton and BB&T executed a revolving promissory note in the amount of $21,000,000 and a letter of credit promissory note in the amount of $7,000,000. Both notes were governed by a loan agreement executed by Dean F. Morehouse ("Morehouse") as President of MTM Builder/Developer, Inc., the manager of Brampton. The loan agreement required payment of the Loan in monthly installments to cover interest accrued and portions of the principal. The loan agreement permitted BB&T to accelerate repayment in the event Brampton defaulted.

Also on July 11, 2005, Morehouse executed a continuing guaranty, in which he promised to personally and unconditionally guaranty the repayment of the entire Loan (the "Guaranty"). The Guaranty permitted BB&T to accelerate repayment of the Loan as against Morehouse in the event Brampton went into default.

On March 24, 2006, Hill Sapphire, LLC ("Hill Sapphire") executed a mortgage securing a debt of $1,760,000.00 that it owed to Morehouse (the "HS Mortgage"). The HS Mortgage was attached to real property (the "Mortgage"). That property is described as:

>     Parcels Nos. 16-1-2 and 16-1-6 Estate Smith Bay
>     Nos. 1, 2 and 3 East End Quarter
>     St. Thomas, U.S. Virgin Islands
>     As shown on PWD No. D9-6059-T96
>     Consisting of approximately 2.923 acres and 4.161 acres, respectively

(the "Property").

Brampton failed to make the required payments on the Loan from BB&T. Morehouse also failed to make the required payments on the Loan. On June 3, 2010, BB&T filed suit against Morehouse in the United States District Court for the District of Columbia (the "D.C. litigation"), alleging that Morehouse had failed to perform as required under the Guaranty.

While litigation in the District of Columbia was ongoing, BB&T sold its interest in the Loan, the Guaranty, and any of its claims against Morehouse in the D.C. litigation to German American Capital Corporation ("GACC").

On October 26, 2010, Morehouse conveyed the entirety of his interest in the Mortgage to Morehouse Real Estate Investment, LLC ("MREI"). GACC alleges that Morehouse did not receive reasonably equivalent value from MREI in consideration of the assignment. Also on October 26, 2010, Hill Sapphire executed a deed in lieu of foreclosure, conveying the Property to MREI. GACC alleges that Morehouse caused this exchange, and that Hill Sapphire did not receive reasonably equivalent value in consideration of the deed in lieu of foreclosure. The assignment

and deed were both recorded with the Recorder of Deeds for St. Thomas and St. John on December 14, 2010.

On February 14, 2013, the United States District Court for the District of Columbia entered judgment in favor of GACC in the amount of $23,966,216.95 (the "Judgment"). GACC alleges that Morehouse currently owes over $10,000,000 on the Judgment.

GACC filed the complaint in this matter on December 4, 2013. In the complaint, GACC alleges that Morehouse fraudulently conveyed the Mortgage to MREI and that he caused the fraudulent conveyance of the Property to MREI. Morehouse, MREI, and Hill Sapphire have all filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), alleging that GACC's claim was brought after the statute of limitations ran. GACC opposes the motions.

## II.  DISCUSSION

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the [claimant]." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004).

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A

claimant]'s obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

The Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts " 'merely consistent with' a defendant's liability, . . . 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " *Id.* (citing *Twombly*, 550 U.S. at 557).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps[1]:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679).

### III. ANALYSIS

The defendants all allege that the fraudulent conveyance claims were brought after the statute of limitations ran. Specifically they assert: (1) that the law governing fraudulent conveyances made before November 15, 2011, has a two-year statute of limitations; (2) that the statute began to run on the occurrence of the essential facts giving rise to the causes of action alleged; and (3) that through due diligence GACC should have discovered the transfers on December 14, 2010, when they were recorded. GACC does not dispute that its claims are subject

---

[1] *Iqbal* describes the process as a "two-pronged approach" but the Supreme Court took note of the elements a plaintiff must plead to state a claim before proceeding to its two-step approach. Accordingly, the Third Circuit has deemed the process a three step approach. *See Santiago*, 629 F.3d at 130.

to a two-year statute of limitations. Instead, GACC argues that the statute did not begin to run until judgment was entered in the D.C. litigation.

"A fraudulent conveyance claim is governed by the law of the state in which the property is located." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991). In this case the Property and the Mortgage securing the Property, are located in the United States Virgin Islands. As such, Virgin Islands law governs this case. The Virgin Islands law governing fraudulent conveyances occurring before November 15, 2011, is the Virgin Islands Uniform Fraudulent Conveyances Act ("UFCA").[2] *See* V.I. CODE ANN. tit. 28, § 201 *et seq.* The UFCA generally protects current and future creditors from debtors transferring assets in order to escape debts. *See id.* at § 206 ("Every conveyance made without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.")

The statute of limitations for fraudulent conveyances under the UFCA is two years. *See In re Innovative Commc'n Corp.*, Civil No. 2012-51, *11 (D.V.I. Sept. 27, 2013)(slip

---

[2] On November 15, 2011, the Governor signed into law the Virgin Islands Uniform Fraudulent Transfer Act. 2011 V.I. ALS § 7322.

op.)(upholding application of a two-year statute of limitations for fraudulent conveyances occurring before November 15, 2011); *In re Innovative Commc'n Corp.*, 507 B.R. 841, 850 (Bankr. D.V.I. 2014)("Because the Virgin Islands version of the UFCA does not have any statute of limitations provision, the court must follow the traditional practice of borrowing the most analogous statute of limitations from state law.")(internal quotation omitted).

Generally, "the statute of limitations begins to run upon the occurrence of the essential facts which constitute the cause of action." *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 562 (D.V.I. 2004). The UFCA indicates that a creditor's claim accrues when it has "matured." Specifically, it states

> § 209. Rights of creditors whose claims have matured
>
> (1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, *when his claim has matured*, may as against any person except a purchaser for fair consideration...
>
>> (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim...

V.I. CODE ANN. tit. 28, § 209.

The UFCA itself does not define what a "matured" claim is. *See id.* The Third Circuit has also not yet defined what a "matured claim" is for purposes of the Virgin Islands UFCA. That said, circuit courts, including the Third Circuit, have

delineated when the statute of limitations on "matured claims" begins to run for claims in some states where the UFCA was adopted. *See Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 416-17 (3d Cir. 2003); *see e.g.*, *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 416-17 (7th Cir. 2014); *Carey v. Crescenzi*, 923 F.2d 18, 20-21 (2d Cir. 1991).

In *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406 (3d Cir. 2003), the Third Circuit considered when the statute of limitations began to run under New Jersey's version of the UFCA. In that case, the plaintiffs sued John Z. DeLorean ("DeLorean") in Michigan (the "Michigan litigation"). *Morganroth*, 331 F.3d at 407. While the Michigan litigation was ongoing, the defendant's law firm assisted the defendant in transfers of property. *Id.* at 408. Judgment was entered in the plaintiffs' favor in the Michigan litigation. *Id.* at 408-09.

Thereafter, plaintiffs filed suit in the District of New Jersey (the "New Jersey litigation") against DeLorean and his attorneys. *Id.* The plaintiffs alleged that the New Jersey litigation defendants had fraudulently conveyed real property to another party to avoid paying the Michigan litigation judgment. *Morganroth*, 331 F.3d at 416-17. The defendants asserted that the alleged fraudulent transfers had taken place more than six years before the New Jersey litigation was filed. *Id.* The defendants argued that the claim asserted in the New Jersey litigation had

accrued at the time of the transfers that were made during the Michigan litigation. *Id.* As such, the statute of limitations had run by the time the New Jersey litigation was filed. *Id.* The Third Circuit disagreed. The Circuit noted that the "action against the defendants for participating in DeLorean's fraudulent scheme to avoid collection of the Michigan judgment did not accrue until the [plaintiffs] obtained a judgment against DeLorean in the Michigan litigation." *Morganroth*, 331 F.3d at 416-17.

The rationale for beginning the clock when the creditor obtains judgment that is then evaded, rather than when the fraudulent transfer itself occurred, was explained in *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411 (7th Cir. 2014). In that case, the Seventh Circuit stated that "[t]he idea that a claim for fraudulent conveyance aimed at evading having to pay a hypothetical future judgment accrues before the judgment is entered seems far-fetched—and would be if understood to entitle any plaintiff seeking monetary relief in a lawsuit to include a claim for fraudulent conveyance in his complaint just because the defendant might *conceivably* seek to elude a judgment against him, if he got a judgment, by squirreling away the assets needed to satisfy it." *GEA Grp. AG*, 740 F.3d at 417 (emphasis in original).

*German Am. Cap. Corp. v. Morehouse et al.*
Civil No. 2013-118
Memorandum Opinion and Order
Page 11

Though neither *GEA Group AG* nor *Morganroth* was decided specifically as to the Virgin Islands UFCA,[3] the Court finds these cases persuasive. The idea that a plaintiff creditor has to presume that he will win in an ongoing litigation, and that the defendant will engage in fraudulent conveyances in an effort to evade payment, all of which would give rise to a complaint that could be filed from that very moment of clairvoyance, does not seem to comport with a logical and fair reading of the UFCA.[4] A reading requiring such an anticipatory complaint is not supported by the UFCA.  The UFCA states that a creditor *may* bring suit before his claim has matured, *see* V.I. CODE ANN. tit. 28, § 210.  It does not *require* a creditor to do so. *See id.* Thus, the Court concludes that the statute of limitations under the UFCA begins to run on a mature claim on the entry of a judgment.

Having determined that the statute of limitations began to run when the Judgment was entered in favor of GACC, the Court now turns to the facts of this case.  Here, the United States District Court for the District of Columbia entered the Judgment on February 14, 2013.  GACC filed its claim for fraudulent

---

[3] In *Morganroth*, the property at issue sat in New Jersey. Thus, the New Jersey UFCA governed. *See generally Morganroth*, 331 F.3d at 408-09.  In *GEA Group AG*, the Illinois Uniform Fraudulent Transfer Act governed, and was compared to the previously in-force UFCA. *See generally GEA Grp. AG*, 740 F.3d. at 417.

[4] Moreover, such a requirement might raise issues of ripeness.  Of course, the Court is not called upon to reach that issue.

conveyance on December 4, 2013, well within the two-year statute of limitations.

The premises considered, it is hereby

**ORDERED** that Morehouse's motion to dismiss is **DENIED**; it is further

**ORDERED** that MREI's motion to dismiss is **DENIED**; and it is further

**ORDERED** that Hill Sapphire's motion to dismiss is **DENIED**.

                                                    S\_____
                                                    **CURTIS V. GÓMEZ**
                                                    **District Judge**